UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PAUL DEAN ROBERTS,

Plaintiff,

v.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,

Defendants.

No. 2:12-cv-0247 KJM AC P

FINDINGS & RECOMMENDATIONS

Plaintiff filed this pro se civil rights action in state court. Because the complaint contained federal claims under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act (ADA), defendants timely removed the case to federal court. See 28 U.S.C. 1441, 1367. This matter was referred to the undersigned by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). Currently pending before the court is defendant's motion for summary judgment, ECF No. 46, as well as plaintiff's cross motion for summary judgment. ECF No. 50. The court has considered plaintiff's opposition and amended opposition to the motion, as well as those documents originally filed with the second amended complaint.[1] ECF Nos. 52, 51, 9. For the reasons

[1] The only difference between plaintiff's original exhibits in opposition to summary judgment, ECF No. 51-1, and the amended exhibits, ECF No. 52-1, is the inclusion in the amended exhibits of plaintiff's medical records from the Correctional Treatment Center from July through August 2008. These records were provided to plaintiff in response to this court's order of January 9,

discussed below, the undersigned recommends granting in part and denying in part defendants' motion for summary judgment.

I. Allegations of the Complaint

By way of background, plaintiff was sentenced to a term of twenty five years to life in the California Department of Corrections and Rehabilitation in January 2007. ECF No. 9 at 5. He was originally housed at Pleasant Valley State Prison ("PVSP"), a level III institution, beginning in March 2008 after being provided a wheelchair for a permanent mobility disability and documented as an intermittent wheel chair user or "DPO." Id. This disability designation did not require housing plaintiff in a wheelchair accessible cell. Id. "At plaintiff's initial medical evaluation at PVSP, medical staff concluded that, due to plaintiff's medical disability of heart and lung disease, PVSP was not an appropriate placement for fear of plaintiff contracting valley fever." Id. at 6.

In plaintiff's second amended complaint he alleged that in May 2008 he was improperly transferred to High Desert State Prison, a Level IV facility, rather than a Level III institution for which he was eligible, by reason of his disability because there were no available level III institutions. ECF No. 9 at 7. After being evaluated by medical staff, plaintiff's disability designation was changed to a full-time wheelchair user or "DPW" on June 19, 2008 which required a wheelchair accessible cell. Id. However, plaintiff was denied a wheelchair accessible cell for 15 days between June 19, 2008 and July 4, 2008 due to a lack of wheelchair accessible cells at HDSP. Id. at 7-8. "This denied plaintiff the full use of his wheelchair by denying him appropriate wheelchair accessable [sic] housing." Id. at 8.

On July 4, 2008, "[a]ll of plaintiff's property was removed from him and plaintiff was re-housed in the institution's infirmary referred to as the 'Central Treatment Center' ("CTC"), and into a wheelchair accessable [sic] cell in [the] CTC." Id. at 9. While housed in the CTC for a period of one month plaintiff was denied access to his property, canteen, library and religious services, as well as yard program by reason of his disability. Id. at 9-10. Plaintiff's access to

---

2014 partially granting plaintiff's motion to compel. ECF No. 49.

these programs and services was "severely restricted based solely on the defendant's lack of appropriate housing for plaintiff's need for full-time wheelchair use." Id. at 10.

On August 1, 2008, plaintiff alleged that CDCR officials manipulated his disability designation back to an intermittent wheelchair user to justify rehousing him in a regular non-wheelchair accessible cell despite the fact that his disability condition had not changed as reported. Id. at 11-12. "By July 12, 2010, plaintiff's security placement score had dropped to a level 2 custody, however, he remained housed at a level 4 prison due to the lack of appropriate disability housing. On this date plaintiff refused any further use of his wheelchair despite staff's requests, and demanded his disability code be changed to 'DNM' (walks 100 yards without pause with assistive device) so that he could be transferred to a [sic] institution consistent with his security placement score of level 2." Id. at 15. Plaintiff was finally transferred out of HDSP on March 30, 2011. Id. at 16. He therefore alleged that he was inappropriately housed in a level 4 prison for almost three years because of defendant's lack of appropriate housing for disabled inmates. Id.

By way of relief, plaintiff seeks monetary damages and a declaratory judgment against the CDCR for violating the ADA. ECF No. 9 at 3.

II. Defendant's Motion for Summary Judgment

On November 25, 2013, defendant filed a motion for summary judgment on the grounds that: 1) plaintiff's ADA and RA claims are barred because no evidence shows that prison officials were deliberately indifferent to his need for reasonable accommodations; 2) plaintiff received reasonable accommodations after he was deemed disabled; and, 3) defendant is entitled to qualified immunity as prison officials did not violate plaintiff's constitutional rights and their conduct was objectively reasonable. ECF No. 46. Accompanying the motion was a notice to plaintiff pursuant to Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc). ECF No. 47.

III. Plaintiff's Cross-Motion for Summary Judgment

The Local Rules require that "[e]ach motion for summary judgment or summary adjudication shall be accompanied by a 'Statement of Undisputed Facts' which shall enumerate

discretely each of the specific material facts relied upon in support of the motion and cite the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission or other document relied upon to establish that fact." Local Rule 260(a).

The Court has reviewed the document titled "Plaintiff's Notice and Cross–Motion for Summary Judgment" and finds that it is not in compliance with Local Rule 260(a). Merely captioning the pleading as a cross-motion for summary judgment does not relieve plaintiff of his responsibility to comply with the Local Rules. A moving party's failure to cite to the evidence relied upon in support of each fact makes a responding party's burden unnecessarily more difficult. The responding party should be able to quickly ascertain what facts offered by Plaintiff are to be contested and what evidence is relied on in support of each fact. In this case plaintiff merely references his voluminous exhibits submitted in opposition to defendant's summary judgment motion. ECF No. 50 at 2. For these reasons, the undersigned recommends denying plaintiff's cross-motion for summary judgment.

IV. Legal Standards Summary Judgment Pursuant to Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically store information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.);

see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . ., is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving

party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## V. Facts

### A. Undisputed Facts

For purposes of the instant summary judgment motion, the court finds that the following facts are undisputed and supported by evidence in the record:

- Plaintiff Paul Dean Roberts (F-59111) is a California prisoner who was confined at High Desert State Prison (HDSP) at times material to the claims at issue, serving a term of twenty-six years to life following his conviction for failing to register as a sex offender in violation of Penal Code section 290. ECF No. 46-3 at 6-7 (Judgment and Commitment Order).
- Roberts was initially housed at the reception center at North Kern State Prison (NKSP), and due to processing delays was not endorsed for transfer to permanent housing until July 9, 2007.[2] ECF No. 46-3 at 3, 28. At the time of his endorsement, Roberts was designated as an intermittent wheelchair user (DPO). ECF No. 46-3 at 42.
- Under the Armstrong Remedial Plan as amended on January 3, 2001, there are several wheelchair category designations. ECF No. 46-3 at 66.
- Inmates "who do not require a wheelchair full time but are medically prescribed a wheelchair for use outside of the assigned cell, due to a disability other than a lower extremity mobility impairment, i.e., emphysema, serious heart condition, etc., who, due to the severity of

---

[2] To the extent that plaintiff denied that he was granted "extended stay" privileges based solely on his disability, this does not dispute the fact that he was housed at NKSP until July 9, 2007. See ECF No. 51-2 at 2.

their disability, require placement in a designated facility, shall be designated as DPO. All designated DPO inmates/parolees require housing in a designated facility but do not require housing in a wheelchair accessible cell." ECF No. 46-3 at 66.

• At the time of the amendment to the Armstrong Remedial Plan, the designated facilities were: Avenal State Prison (ASP); California Institution for Men (CIM); California Medical Facility (CMF); California State Prison – Corcoran (CSP-Corcoran); California Substance Abuse Treatment Facility (SATF); HDSP; Pleasant Valley State Prison, and Salinas Valley State Prison (SVSP). ECF No. 46-4 at 10.

• Roberts was transferred to Pleasant Valley State Prison (PVSP) in March 2008, but it was later determined by a doctor that Roberts could not be housed at that institution due to a medical condition that increased his risk of complications from Valley Fever infections.[3] ECF Nos. 46-3 at 30, 46-6 at 86-88.

B. Transfer to HDSP

• Roberts was recommended for transfer to High Desert State Prison (HDSP) due to his chronic obstructive pulmonary disease (COPD), and his numerous enemies. Roberts was also designated as needing placement on a sensitive needs yard (SNY). ECF No. 46-3 at 31. Based on all of Roberts' case factors, the classification committee determined that they would refer Roberts to the Classification Services Representative (CSR) with a recommendation for transfer to HDSP. Id. at 30-31. The committee also determined that no alternative placement was available.[4] ECF No. 46-3 at 31.

• Under the amended Armstrong Remedial Plan, "in assessing appropriate placement, the CSR shall consider the inmates' prevailing case factors, status as documented on the CDC

---

[3] Defendants' exhibits contain conflicting evidence as to the specific date in March that plaintiff was transferred to PVSP. Compare ECF No. 46-3 at 3 (listing March 5, 2008) with ECF No. 46-6 at 88 (indicating that plaintiff was leaving for PVSP on 3/4/08). Although plaintiff disputes this fact, it is not material to resolution of the instant motion for summary judgment because it is a background fact.

[4] As plaintiff's only basis to dispute this fact is based on "current regulations" which allow for an irregular placement at a lower security facility, the court deems this fact undisputed as to Roberts' placement in 2008. See ECF No. 51-2 at 5.

Form 1845, and any additional health care placement concerns documented thereon. The CSR shall then endorse the inmate, with reference to the CDC Form 1845." ECF No. 46-4 at 13. "Where a verified DPP Section C inmate has additional significant health care concerns, the CSR, in consultation with Health Care Population Management (HCPM) staff, shall place the inmate in an appropriate designated DPP facility that has an established health care delivery system suited to the inmate's condition. Id.

• On April 30, 2008, noting Roberts' susceptibility to Valley Fever, the CSR endorsed Roberts for transfer to HDSP. ECF No. 46-3 at 31.

• Roberts was received at HDSP on May 20, 2008. ECF No. 46-3 at 3, 5. At the time of his arrival at HDSP, Roberts' disability placement was designated as DPO. ECF No. 46-3 at 28, 42.

C. DPW Designation

• On June 19, 2008, Roberts was seen by his treating physician. ECF No. 46-6 at 63. Roberts complained of back pain, consisting of an 8 on a scale of 1-10 when standing, but a 2-3 when sitting in his wheelchair.[5] Id. Roberts indicated that he had been able to stand for increased periods of time since taking MS Contin. Id.

• The doctor ordered an MRI of Roberts' spine, and a referral to neurosurgery. ECF No. 46-6 at 62. In addition, the doctor changed Roberts' disability designation from DPO to DPW. ECF No. 46-3 at 45.

• An inmate who is designated as DPW is medically prescribed a wheelchair for full time use both within and outside the assigned cell due to a permanent disability. ECF No. 46-3 at 66. All inmates designated DPW must be housed in a designated facility and require housing in a wheelchair accessible cell. Id.

D. CTC Placement

• In June 2008, the SNY at HDSP was comprised of five buildings. ECF No. 46-6 at 92.

////

[5] Although plaintiff disputes this fact, he produces no conflicting evidence on this point.

Each of the five buildings had two wheelchair accessible cells.[6] Id.

• If no wheelchair accessible cells were available for a DPW designated inmate, the inmate could be moved to the Correctional Treatment Center (CTC) on a temporary basis.[7] ECF No. 46-6 at 96.

• Roberts was placed into the CTC on July 3, 2008. ECF No. 46-6 at 59.

• Circumstances that result in an inmate being placed in the CTC and prevent him from returning to his assigned cell require that staff assume control of the inmate's property.[8] ECF No. 46-6 at 98.

• On July 22, 2008, Dr. French changed Roberts' disability designation to DPO. ECF No. 46-3 at 47. The new accommodation chrono indicated the Roberts needed a bottom bunk and lower tier cell, a wheelchair for use outside of his cell, a walker, waist chains, a commode chair, mobility vest, and a transport vehicle with a lift.[9] Id. Roberts could not be assigned to a job requiring walking outside of his cell or prolonged standing. Id.

• Roberts was released from the CTC on August 1, 2008. ECF No. 46-3 at 5. That same day the Health Care Manager approved Roberts' new DPO designation. ECF No. 46-3 at 48.

• On June 16, 2009, Roberts' accommodation chrono was again updated. ECF No. 46-3 at 49. The previous items were renewed, and Roberts was issued a new accommodation of grab bars around his toilet.[10] Id.

• On August 3, 2009, Dr. Miranda discontinued Roberts' use of a walker, and added a

---

[6] To the extent that defendant contends that there were two additional cells that were retrofitted to be modified wheelchair accessible cells, the court does not rely on this fact because there is absolutely no evidence in the record to support it.

[7] The parties' additional statements concerning whether such placement complies with the Armstrong Remedial Plan and the ADA are legal conclusions and are therefore not cited as statements of fact by the court. See ECF Nos. 46-2 at 4 (Defendant's Statement of Undisputed Facts); 51-2 at 8-9 (Plaintiff's Response to Undisputed Statement of Facts).

[8] To the extent that plaintiff disputes this as being contrary to the Armstrong Remedial Plan, the dispute is deemed immaterial to establishing an ADA violation. See ECF No. 51-2 at 11-12.

[9] Plaintiff disputes this fact, but does not provide any evidence to the contrary demonstrating that the accommodations provided could not even be used in a non-wheelchair accessible cell. Accordingly, this fact is deemed undisputed.

[10] Plaintiff disputes this fact, but does not provide any evidence to the contrary. Accordingly, this fact is deemed undisputed.

rojo pad. All remaining accommodations remained the same. ECF No. 46-3 at 50.

• On January 6, 2010, Roberts was again issued a new accommodation chrono to add the use of a walker with a seat.[11] ECF No. 46-3 at 51. All remaining accommodations remained the same. Id.

• Dr. Miranda updated Roberts' disability placement program verification, and changed Roberts' disability designation from DPO to DNM. The DNM designation does not impact an inmate's placement. ECF No. 46-3 at 54.

• On October 8, 2010, Roberts was issued a renal diet. ECF No. 46-3 at 56. That diet was discontinued on February 25, 2011. Id. at 57.

E. Transfer from HDSP

• Roberts was transferred from HDSP to the California Training Facility (CTF) on March 30, 2011.[12] ECF No. 46-3 at 4.

• On May 20, 2011, Roberts was seen by Dr. Bright for an ADA consultation. ECF No. 46-5 at 76. During the consult, Roberts told Dr. Bright that he had been in a wheelchair for the previous three years, and had to file suit to get out of the wheelchair and get a front-wheel walker.[13] Id.

• Roberts was transferred from CTF to the California Institution for Men (CIM) on September 20, 2012. ECF No. 46-3 at 4.

• On December 11, 2012, Dr. Yee rescinded Roberts' chrono for a walker, waist chains, a renal diet, rojo pillow, and extra pillow.[14] ECF No. 46-3 at 58. Dr. Yee noted that Roberts was able to walk, and that his DNM status was being reviewed. Id.

---

[11] Plaintiff contends that that this chrono does not correctly represent the actual accommodations afforded to him, but does not provide any evidence to support this assertion. Therefore, the court deems this fact undisputed.

[12] Plaintiff correctly notes that the defendant improperly identified the name of this facility. The correction has been made to accurately reflect the name of this institution.

[13] Plaintiff only disagrees with the "context" of this exhibit. See ECF No. 51-2 at 16.

[14] To the extent that plaintiff argues that this action was done in retaliation, any dispute is immaterial. The allegations in plaintiff's second amended complaint only allege an ADA violation. ECF No. 51-2 at 16-17. Furthermore, plaintiff's assertions that a different prison re-issued him a walker after he complained is not material to the events that occurred while plaintiff was housed at High Desert State Prison. Id. These facts are therefore deemed undisputed.

• The following day, Dr. Yee issued a new disability placement program verification, restricting Roberts from a triple bunk, with no stairs and a lower tier cell. No additional accommodations were noted. ECF No. 46-3 at 59.

F. Disputed Material Issues

Defendant contends that due to Roberts' safety concerns, he was placed on the SNY at HDSP. ECF No. 46-3 at 28.

Plaintiff denies this fact and contends that he was placed on the SNY at HDSP due to an ADA housing shortage as identified in a federal injunction issued on January 18, 2007 in the Armstrong class action. ECF No. 9 at 23-24. This federal injunction found that CDCR "lack an adequate number of wheelchair accessible placements, toilets and showers to accommodate the needs of prisoners with mobility impairments who need to use a wheelchair either full-time or part-time. This shortage is particularly acute for prisoners with special housing needs such as protective custody, enhanced mental health care, administrative segregation, or high security levels." Id.

Defendant asserts that inmates in the CTC can be closely monitored to determine whether the DPW designation is appropriate. ECF No. 46-6 at 92.

Plaintiff disputes this fact by pointing to evidence that he was not medically admitted to the CTC. ECF No. 9 at 51. He was transferred to the CTC due to an ADA housing shortage. Id.

Defendant contends that inmates placed into the CTC for temporary housing must be classified within 10 working days, as necessary, by a Health Care Access Classification Counselor II. ECF No. 46-6 at 95.

Plaintiff denies that he was subject to the particular Operational Procedure cited by defendant for the CTC since he was only admitted into the CTC because of a disability housing shortage. To support this contention, plaintiff cites the very Operational Procedure submitted by the defendant which states that: "[w]hen inmates housed in the CTC have been identified as meeting the criteria established within the Armstrong/Clark Remedial Plans, CTC staff shall refer to the following HDSP Operational Procedures for specific housing and processing guidelines: OP #612 Disability Placement Plan (Armstrong)…." ECF No. 46-6 at 96. This Operational

Procedure was not made a part of the record of the instant case.

Defendant asserts that general population inmates who are housed in the CTC are scheduled for dayroom and/or outside activities. ECF No. 46-6 at 97.

However, plaintiff disputes this fact and contends that he was not scheduled for dayroom activities, yard access, law library and religious services while assigned to the CTC. ECF No. 52-1 at 62 (Plaintiff's affidavit).

Defendant asserts that once placed in the CTC, an inmate's property is inventoried by staff and taken to receiving and release (R&R) for storage until the inmate is released from CTC. ECF No. 46-6 at 98.

Plaintiff disputes this fact and contends that his property was held for nearly 90 days in a housing unit side room rather than the R&R. See ECF Nos. 9 at 43-44 (CDC 1824 form stamped received by HDSP Appeals on 8-05-08); 52-1 at 62 (Plaintiff's Affidavit).

Defendant contends that inmates housed in the CTC for more than 10 working days, and who have been approved by the classification committee for activity group placement are eligible for canteen draws according to their assigned privilege group. ECF No. 46-6 at 100. At the time of his placement in CTC, Roberts had no money in his trust account with which to purchase canteen items. ECF No. 46-6 at 109.

Plaintiff disputes this fact and contends that he did in fact have funds on his trust account with which to purchase canteen items in July 2008. ECF No. 52-1 at 62 (Plaintiff's affidavit); ECF No. 52-1 (ITAS Trust Account Display for March/April 2008).

VI. Analysis

At the outset, the court notes that this action is proceeding on a single claim under the ADA. See ECF Nos. 10 (Findings and Recommendations), 15 (Order adopting Findings and Recommendations). Plaintiff repeatedly emphasizes defendant's alleged violations of the Armstrong Remedial Plan, but such violations do not provide an independent basis for damages in this court.[15] Violations of the Armstrong Remedial Plan must be addressed through the

[15] The Armstrong Remedial Plan refers to a remedial order issued in Armstrong v. Davis, No. CV94–2307–CW, by the District Court for the Northern District of California to enjoin practices that discriminated against disabled inmates in California prisons. See generally Armstrong v.

procedures provided by that plan. See Frost v. Symington, 197 F.3d 348, 358-59 (9th Cir. 1999); see also Crayton v. Terhune, 2002 U.S. Dist. LEXIS 17568, *10-11 (N.D. Cal. 2002); Jamison v. Capello, 2013 U.S. Dist. LEXIS 16958, *14 (E.D. Cal. 2013); Weathers v. Hagemeiister-May, 2014 U.S. Dist. LEXIS 10524, 15 (E.D. Cal. 2014). This court does not have jurisdiction to enforce the Armstrong decree. Even if that decree was violated, that does not necessarily mean that Title II of the ADA was violated. See Cagle v. Sutherland, 334 F.3d 980, 986-87 (9th Cir. 2003) (consent decrees often go beyond minimum legal requirements). Accordingly, compliance with the Armstrong decree and/or remedial plan is immaterial to plaintiff's claim in this case.

Furthermore, both parties reference a claim under the Rehabilitation Act ("RA") although the complaint states no such claim. See ECF Nos. 9 (amended complaint) and 10 (screening order). While claims under the ADA and the RA are analyzed using the same standard,[16] the RA has not been asserted as a basis for relief here. Accordingly, the undersigned will disregard the references to an RA claim in defendant's motion for summary judgment as well as in plaintiff's opposition.

A. Elements of an ADA Violation

Title II of the Americans with Disabilities Act (ADA) prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability. 42 U.S.C. § 12132 (1994); Weinrich v. L.A. County Metro Transp. Auth., 114 F.3d 976, 978 (9th Cir.), cert. denied, 522 U.S. 971 (1997). The Supreme Court has held that Title II of the ADA applies to state prisons. Pennsylvania Dept. of Corr. v. Yeskey, 524 U.S. 206, 210 (1998); see also Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir. 2001). To state a claim under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's

---

Davis, 275 F.3d 849 (9th Cir. 2001); Armstrong v. Wilson, 124 F.3d 1019 (9th Cir. 1997) (affirming order requiring submission of a remedial plan for compliance by the CDCR with the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131–34, and the Rehabilitation Act of 1973(RA), 29 U.S.C. § 794, in California prisons).

[16] See Olmstead v. Zimring, 527 U.S. 581 (1999) (noting that Congress provided that "[t]he remedies, procedures, and rights" in the RA shall apply to Title II of the ADA); Duffy v. Riveland, 98 F.3d 447, 455 (9th Cir. 1996) (adopting the factors established for analyzing an RA claim as relevant to an ADA claim as well).

services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010); McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004); Weinrich, 114 F.3d at 978.

Although Section 12132 does not expressly provide for reasonable accommodations, the implementing regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). The duty to provide "reasonable accommodations" or "reasonable modifications" for disabled people under Title II of the ADA arises only when a policy, practice or procedure discriminates on the basis of disability. Weinreich v. Los Angeles County MTA, 114 F.3d 976, 979 (9th Cir. 1997).

The Supreme Court has ruled that a prisoner may state a Title II claim based on "the alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs[.]" U.S. v. Georgia, 546 U.S. 151, 157 (2006) (noting that plaintiff, a paraplegic prisoner, may be able to state a Title II claim premised, inter alia, on his allegation that he could not turn his wheelchair around in his cell).

In Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir.2001), the Ninth Circuit stated that "[t]o recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." Duvall, at 1138 (citing Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir.1998) (footnote omitted)). The Court held that deliberate indifference is the appropriate standard to use in determining whether intentional discrimination occurred. Id. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1138 (citing City of Canton v. Harris, 489 U.S. 378, 389 (1988)). In order to

meet the second element of the deliberate indifference test, a failure to act must be the result of conduct that is more than negligent and involves an element of deliberateness. Id. at 1139.

"To recover monetary damages under Title II of the ADA ..., a plaintiff must prove intentional discrimination on the part of the defendant," Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001) (emphasis added). Thus, the mere objective violation of the ADA (or an ADA consent decree) is insufficient. The context of the case must in some way demonstrate that the acts taken by a defendant were purposefully designed to avoid ADA accommodation obligations known to the defendant, i.e., a deliberate indifference standard. Id.

B. Deliberate Indifference

As noted, in order for plaintiff to prevail on his ADA damages claim he must produce evidence that raises a triable issue of material fact with respect to whether his placement and retention in the CTC, and the alleged lack of reasonable accommodation he received for his disability during that period, was the result of deliberate indifference.

To satisfy the first prong of deliberate indifference, a plaintiff must identify a specific, reasonable and necessary accommodation that the public entity has failed to provide, and that the plaintiff notified the public entity of the need for accommodation. Duvall, 260 F.3d at 1138.

The second prong of deliberate indifference requires a showing that the entity deliberately failed to fulfill its duty to act in response to the request for accommodation. Id. at 1139–40. To raise a triable issue of material fact on this point, the plaintiff must present evidence that the entity failed to undertake a fact-specific investigation, gathering from the plaintiff and qualified experts sufficient information to determine what constituted a reasonable accommodation. Id. The Ninth Circuit has made clear that in order to satisfy this prong, the plaintiff must show that the entity's failure to act was deliberate:

> Because in some instances events may be attributable to bureaucratic slippage that constitutes negligence rather than deliberate action or inaction, we have stated that deliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course. Rather, in order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness.

Duvall, (internal citation omitted).

C. Placement at HDSP

In this case, the defendant does not contest plaintiff's status as an individual with a disability who otherwise is qualified to participate in and receive services from the CDCR. Therefore, this court's inquiry will focus on the last two factors concerning whether plaintiff was excluded from participation in or denied benefits by reason of his disability. See Simmons, 609 F.3d at 1021.

Based on the evidence set forth above, the Court finds that there is no genuine issue of material dispute with respect to plaintiff's allegation that he was improperly transferred and retained at HDSP by reason of his disability. The record evidence establishes that due to plaintiff's COPD, which placed him at risk of complications due to valley fever, as well as his need to be placed on a sensitive needs yard due to concerns about enemies, HDSP was the only institution that could accommodate all of plaintiff's housing needs. Therefore this claim fails under the last prong of the test for demonstrating an ADA violation. See Simmons, 609 F.3d at 1021. Accordingly, the undersigned recommends granting defendant's motion for summary judgment concerning his placement at HDSP.

D. Failure to Provide Wheelchair Accessible Cell and Placement in CTC

However, plaintiff has established a triable issue of material fact based on his one month placement in the CTC with its attendant denial of dayroom activities, yard access, law library and religious services. See ECF No. 9 at 51 (Memorandum regarding HDSP Appeal Log #HDSP-H-08-02232 stating that plaintiff should have received his property while in the CTC because his circumstances differed from a medical admit). A rational trier of fact would be able to find that the defendant was deliberately indifferent to plaintiff's need for accommodation in a wheelchair accessible cell by virtue of his disability and that he was denied access to dayroom activities, yard access, law library and religious services. See United States v. Georgia, 546 U.S. at 157 (recognizing that "the alleged deliberate refusal of prison officials to accommodate Goodman's disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted 'exclusion from participation in or … denial of the benefits of'

the prison's 'services, programs, or activities.'") Therefore, the undersigned recommends denying defendant's motion for summary judgment as to this claim.

Similarly, viewing the evidence in the light most favorable to the plaintiff, there is a genuine issue of material fact concerning defendant's failure to provide a wheelchair accessible cell for two weeks prior to his placement in the CTC. Plaintiff alleges in his second amended complaint that this failure to accommodate his disability denied him the full use of his wheelchair." ECF No. 9 at 8. Here, based on plaintiff's DPW designation on June 19, 2008, defendant was on notice of the need to provide an accommodation for plaintiff's mobility disability. See Duvall, 260 F.3d at 1138. There is no evidence in the record demonstrating any efforts to locate a wheelchair accessible cell for plaintiff in any of the HDSP housing units between June 19, 2008 and July 4, 2008, when he was transferred to the CTC. A rational trier of fact could therefore conclude that defendant was deliberately indifferent to plaintiff's need for an accommodation through its failure to take any action during this period of time. Id. The undersigned therefore recommends denying defendant's motion for summary judgment on this claim.

E. Change from DPW to DPO Status

With respect to plaintiff's claim that doctors at HDSP changed his disability designation on August 1, 2008 due to a lack of wheelchair accessible cells, there is no genuine issue of material fact. Regardless of plaintiff's disagreement with the medical conclusion that he no longer met the criteria for full-time wheelchair use, this is not sufficient to state a claim under the ADA as a matter of law. See Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1289, 1294 (11th Cir. 2005) (finding that the RA, like the ADA, was never intended to apply to decisions involving medical treatment); Rucker v. Trent, 2012 WL 4677741 at * (N.D. Cal. Sept. 30, 2012) (stating that "the ADA prohibits discrimination because of a disability, not inadequate treatment for a disability."). When viewing the facts in the light most favorable to the plaintiff, there simply is no triable issue of material fact demonstrating that defendant was deliberately indifferent to plaintiff's request for an ongoing accommodation for full-time wheelchair use. See Duvall, 260 F.3d at 1139-40. Here, plaintiff's medical records establish that while housed at the CTC,

medical staff conducted a review of his medical condition and needs and determined that a DPW designation was no longer appropriate. Id. (stating that a public entity is "required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation….").
Therefore, defendant is entitled to judgment as a matter of law as to this claim.

VII. Qualified Immunity

A. Standard

Defendant seeks summary judgment on the additional grounds of qualified immunity. In resolving a claim for qualified immunity the court addresses two questions: (1) whether the facts, when taken in the light most favorable to plaintiff, demonstrate that the officers' actions violated a constitutional right, and (2) whether a reasonable officer could have believed that his conduct was lawful, in light of clearly established law and the information the officer possessed. Anderson v. Creighton, 483 U.S. 635 (1987). These questions may be addressed in the order that makes the most sense given the circumstances of the case. Pearson v. Callahan, 555 U.S. 223 (2009). Where the answers to these questions turn on disputed material facts, which must be decided by a jury, qualified immunity is inappropriate. See Wilkins v. City of Oakland, 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate."), cert. denied, 543 U.S. 811 (2004).

B. Analysis

The first question has already been answered. As indicated above, the court has concluded that the facts, taken in the light most favorable to plaintiff, establish an ADA violation. Therefore, the only remaining question for purposes of qualified immunity is whether the right was clearly established at the time of the alleged violation. See Saucier v. Katz, 533 U.S. 194 (2001). The court must undertake its evaluation of whether a right was clearly established "in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. In essence, the question is whether the official could have reasonably but erroneously believed that his conduct did not violate the plaintiff's rights. Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001); see also Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("The

contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

The actions complained of occurred in 2008. The United States Supreme Court first held the ADA applicable to state prisons in 1998, a full ten years before the events giving rise to the present action. See Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210 (1998). Furthermore, the Armstrong Remedial Plan cited by both parties to this action was finalized on January 3, 2001. See ECF Nos. 46-3 at 61-67, 46-4, 46-5 at 1-6. Not only has the litigation in the Armstrong class action continued since 2001, but the CDCR's compliance with the remedial plan has constantly been monitored by the court since that time. See Armstrong v. Davis, No. CV94–2307–CW (N.D. Cal). Therefore, in this specific context, the court finds that a prisoner's rights under the ADA were sufficiently clear so that HDSP officials would reasonably know that their actions violated those rights. Accordingly, defendant's motion for summary judgment on grounds of qualified immunity should be denied.

VIII. ADA Claim for Punitive Damages

Defendant argues that plaintiff's claim for punitive damages must be dismissed because punitive damages are not available under Title II of the ADA. In Barnes v. Gorman, 536 U.S. 181, 189-190 (2002), the Court held that because punitive damages may not be awarded in private suits brought under the Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act. Plaintiff's claim for punitive damages must therefore be dismissed.

IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 46) be granted as to plaintiff's claim that he was improperly transferred to and housed at HDSP; plaintiff's claim that his disability designation was improperly changed to DPO status; and, plaintiff's request for punitive damages.

2. Defendant's motion for summary judgment be denied as to plaintiff's claim that he was housed in the CTC due to a lack of wheelchair accessible cells at HDSP, that he was denied a wheelchair accessible cell for two weeks prior to his placement in the CTC, and the defendant's

claim that it is entitled to qualified immunity.

3. Plaintiff's cross-motion for summary judgment (ECF No. 50) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 19, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE